So you win a victory in the lower court, and you appeal. Well, that is true, Your Honor. We — Not a usual occurrence. I would agree with that. We did — we acknowledge we did prevail on the Plano's Fair Labor Standards Act — No, like the preemption ruling. Correct. But if — it seems to me, anyway, that this was — once the decision was made to send the case back down, and the Court went on to make a preemption ruling, that that was dictated under the circumstances. And it wasn't necessary to the outcome, right? Well, Your Honor, I think it — I would — I disagree to the extent that we had argued below that the case was subject to complete preemption. So, in other words, we were making an argument that under the Labor-Management Relations Act — But what I'm saying is, this is a jurisdictional point. Do we have jurisdiction to hear this case now when all we have left is your complaint  Well, I believe so, Your Honor, because I don't think — I know you want to preserve your right to argue preemption in the State court. And you would like — you know, you would like to have the ability to do that. But you're not going to be faced with a res judicata point because it was dicta. It wasn't necessary to the outcome. So, you know, you have a — if you go to State court, you can make your argument. The — I believe that I — or I would agree with you with what — Why would we want to — I mean, you know, the case is gone as far as we're concerned. I mean, you know, why would we want to — and how are you harmed by this in any way? Well, because — I think we are harmed because we have to continue with the litigation in the State court. Had the lower court granted our motion for summary judgment with respect to the preemption argument, then the — that we — the proceedings would be over. The case is closed for a different reason, and preemption was decided, but it wasn't necessary to that closure, to closing the case, to dismissing the case. Well, we had argued that — again, that the — that there was complete preemption, that the — that the effect of the LNRA was to — was such that that — that was a jurisdictional base in and of itself before the district court. So, therefore, you know, we think that the lower court was compelled to issue a ruling on the — on the preemption issue. Now, you think that, but that's maybe where you and I part company on that question. I mean, why would they have to do that if they could rule it — if they could dismiss the case on another basis? Well, Your Honor, I don't — with respect to complete preemption, I don't think we'll have another opportunity to argue that the district court had jurisdiction under the LNRA. In other words, that was our last opportunity to do it. And because the court has gone ahead and proceeded to dismiss the case, we — we're not going to be able to go into State court and argue that the district court should have had jurisdiction. We may be able to argue conventional preemption, but we can't argue that there was jurisdiction under 301 so as to confer jurisdiction on — to the district court. Your argument in terms of how you're aggrieved is that had you prevailed on the complete preemption argument, the New York labor law claims would be gone. They wouldn't be — they wouldn't exist in Federal court, and they wouldn't exist in State court. They'd be gone. But instead, they're alive, and you must now face a subsequent proceeding in State court. That's correct, Your Honor. That's our — that's our position with respect to that. With — with regards to the — or with regard to the preemption argument itself, we, you know, respectfully believe that the district court committed an error, particularly with respect to the issue regarding the captains at the hotel. As you know from the — from the briefs, there was a — Before we get there, can I just go back to preemption, because I know that we're about to leave this issue of the jurisdiction. And before we leave that, let me just ask you, in your view, does the order in which the decision was made in the opinion matter or not? I don't — we don't believe that it does. I don't — I mean, she — the district court issued a decision and then — and then dismissed it. I don't see that the order — I mean, she did issue a ruling and then proceeded to remand the case. Okay. Go ahead. Go on ahead. So with respect to the — with respect to the preemption argument itself, we think that it's particularly relevant with respect to the job classification known as a captain at the hotel. There was significant bargaining between the union that represented the plaintiffs and the hotel over what the captain's job responsibilities were, whether the hotel should actually have a captain. And there were a series of negotiations that all culminated in the May 2011 collective bargaining agreement between the hotel union and the — and the hotel. And in order to decide whether or not the plaintiffs have a claim with respect to the share of the service charge that the captain received — in other words, whether the — whether the plaintiffs can prevail on their claim under New York labor law — they're going to have to establish that either the hotel or its agents improperly retained a portion of the service charge. And that's diametrically at odds with the collective bargaining relationship. And all the cases were — were that there could be a conflict and still not be — not require preemption. The preemption comes up in the context of — of deciding — of actually having the — having to interpret the collective bargaining agreement. There's no issue of interpretation that's raised here. I would disagree respectfully, Your Honor. I think there is. I think to — for this — for the — for that claim to be fully litigated, either in the district court or the state court, there's going to have to be evidence regarding the collective bargaining agreement, the bargaining history between the parties, the — and I'd invite the Court to — there's a copy of the agreement in our — in the appendix. And the provisions regarding the captains are very — We're not arguing — there wouldn't be a debate over what the agreement holds and what the agreement requires. There would be a debate — a debate on whether or not somebody violated it, but that's a different story. There's no debate over what was said. It's a question of really whether the — the — it seems to me whether the actions taken were — were — can be — can be looked at independently of the agreement, you know, of having to interpret its terms. And, Your Honor, I would submit in this situation, I think an interpretation is going to be necessary one way or the other because there's issues regarding how the captains were compensated, what their — in the agreement, what work they were to perform. And we have the potential for a jury or a judge disagreeing with the — with the — whether the captains should have been in the bargaining unit itself. And that's — that's exclusively within the jurisdiction of the National Labor Relations Board. If the plaintiffs were questioning whether the captains ought to be in the bargaining unit, the appropriate mechanism to challenge that is to file a petition with the board in order to amend the certification. And that was never — that was never done here. The plaintiffs just proceeded straight to litigation within maybe three or four weeks after they signed the contract or ratified the contract. I see my time is up, and I would — Sotomayor, thank you, Your Honor.